[Sac. No. 4174. In Bank.—July 29, 1929.]

CALIFORNIA NATIONAL BANK, Respondent, v. EL DORADO LIME AND MINERALS COMPANY et al., Defendants; GEORGE BONNEFOY et al., Appellants.

Arthur C. Huston and Thomas B. Leeper for Appellants.

Devlin & Devlin and Hinsdale & Piggott for Respondent.

PRESTON, J.—We think it impossible to find a prototype for the situation presented by the above-entitled appeal. The assignments of error consist of attacks upon the findings of the court below in the settlement of the accounts of a trustee. Counsel writing the brief on appeal suggests at the outset that we call for the services of an accountant to aid our deliberations and at the same time presents in addition to the voluminous record a large suitcase full of original documents which he asks us to examine. In these requests may be found the germ of the error into which the appellants have fallen, for we are asked, in disregard of our established rules of appellate practice, to sit as a trial court to pass upon objections and exceptions to literally a score of items of this account allowed by the court below. No single assignment of error is based upon the contention that no evidence may be found in the record to support the item attacked and, indeed, no such assignment could be truthfully made. Notwithstanding this failure to conform to our rules of procedure, we have spent considerable time in trying to find a substantial item to which criticism could properly be made by an appellate court and we have not found one. Counsel has presented his points in an incomplete, piecemeal and partisan manner. Moreover, his criticisms are promiscuous and without definite object. In fact, his brief is an unrestrained criticism of any and every ruling of importance made by the court below. We are firmly convinced that no good purpose can be served by a prolonged discussion of the much-involved transactions from which this action resulted. Even a short statement of all of the facts would add undue length to this opinion. However, enough will be recited to show the correctness of the observations we have made.

Prior to June 1, 1917, appellants George Bonnefoy and Herbert Shear and defendant F. R. M. Bloomer were a copartnership operating two unrelated business enterprises, one a lime business under the fictitious name of El Dorado

Lime Company and the other a wood and coal business under the fictitious name of Pioneer Wood & Coal Company. The business in both branches was in bad financial condition. Dissension among the partners also existed. The lime business was indebted to plaintiff bank in an aggregate sum of over $34,000, besides accrued interest. The wood business was also indebted to the same institution in the sum of about $25,000. The partnership applied for additional loans from plaintiff. This resulted in an investigation of the properties and a demand by the bank for the payment of all of said indebtedness. To promote payment thereof and to better secure plaintiff, the copartnership agreed with plaintiff that one George A. Starkweather should be put in exclusive management and control of both enterprises as joint agent of the parties interested.

Said agent took charge of said business and managed and operated the same for a short time. Then on June 13, 1917, said agent, acting on his own account and not for plaintiff, at the solicitation of said copartners, entered into an agreement in writing which had for its object the transfer of both said enterprises and all properties in connection therewith to the said Starkweather as trustee, said trust to last for a period of one year, at the end of which time the trustee might, by the payment of all the indebtedness to plaintiff, cause to be formed two separate corporations, one to take over each of said enterprises, but if said indebtedness was not paid or if said trustee did not care to proceed further, the property was to be returned to the former partners. In this agreement said trustee was given the fullest power of exclusive management and control of said enterprises, including expressly full power and authority to borrow money, make contracts, and buy for and sell the products of said concerns.

There followed immediately after the making of this contract proper transfers to said trustee of all said properties. Thereupon he immediately set about to rehabilitate said concerns and to that end he began to incur additional indebtedness to plaintiff bank. Among other things, he established the existence of new deposits of lime, built a new plant in connection therewith, including two miles of railroad, together with new and up-to-date equipment for the operation thereof. Said copartners all knew of these efforts

being made by the trustee. One of said copartners remained in charge of the said wood business and his brother was for a time in charge of said lime business under said trustee. The old bookkeeper was continued in the same service under the trustee as had theretofore been performed by him. The agreement of June 13, 1917, was extended for a period of six months following the expiration of the first year. Said trustee evidently misinterpreted the covenants thereof respecting the exercise of the option to take over said properties by the formation of two corporations for in February, 1918, and before the expiration of one year, he caused to be incorporated the defendant, El Dorado Lime and Minerals Company, a corporation, and in December, 1918, he caused the wood and coal to be likewise incorporated under the name of Pioneer Wood & Coal Company, a corporation.

Following the incorporation of the lime business, he caused a bond issue of the corporation, in the sum of $100,000, to be floated and secured by the execution of a deed of trust to the defendant California Trust and Savings Bank. This issue of bonds was used in refunding a certain amount of the old indebtedness of the copartnership held by plaintiff and in payment of some of the subsequent indebtedness incurred by said trustee. In addition to the bond issue the lime company, through said trustee, incurred still more indebtedness at plaintiff bank, represented by the issuing of many promissory notes in small amounts. Finally a note for some $40,000, the then total of this last indebtedness, was given and secured by the making of a mortgage by said lime company to plaintiff, which mortgage also covered future advances. The indebtedness against the wood business was also increased by said trustee and the old indebtedness refunded and carried into new obligations signed by the trustee.

Efforts to rehabilitate both enterprises failed and on April 15, 1921, the present action was begun. This action took on a peculiar form. Ostensibly it was to foreclose liens held by plaintiff on the properties formerly belonging to said copartnership, but the complaint in addition undertook to set forth all the many transactions that had occurred between the said copartnership and said Starkweather, setting out at length the various contracts and agreements that passed between them and, in short, it was really a suit for an

accounting of the full stewardship of said trustee in order to ascertain what sums had been advanced by him for the benefit of said trust estate and to have plaintiff and other creditors subrogated to the rights of said trustee as against the trust estate; also to have a sale of the trust properties and to have personal judgment against said copartners for any deficiency. In this contention, it should be noted, however, that the complaint contained allegations which, if true, would have upheld Starkweather in his contention that he had exercised his option and was entitled to organize the corporations above mentioned and to have issued to him the quota of stock mentioned in said agreement of June 13, 1917.

The various defendants answered the complaint and interveners were allowed to appear, the ramifications of which matters are not involved upon this appeal. Appellants by their answer denied that Starkweather had any right to form said corporations or to issue to himself any stock or shares thereof and claimed that he had breached his contract or option in that he had neither paid the original indebtedness of the copartners nor had he returned the properties nor had he in other respects carried out the trust agreement and likewise they demanded an accounting.

The trial of the action started on May 10, 1922, and the first fourteen days thereof were consumed in ascertaining whether Starkweather had properly exercised the said option to take over the properties formerly belonging to said copartnership and convert them into said corporations as provided in the plan set forth in said written agreement of June 13, 1917, and also whether Starkweather, as such trustee, had the right to incur the subsequent indebtedness so incurred by him in the management, control and operation of said trust property. At the end of this period the court ruled that Starkweather had not done the things that would have given him the right to exercise the option contained in said contract and that, although these corporations had been organized, they were nevertheless but extensions of the acts of said Starkweather, as trustee, and not in his own right; that Starkweather, as well as the corporations, continued to be but the manifestation of the trusteeship created by said contract and that it was the duty of said trustee upon a proper accounting and reimbursement of the funds advanced to said trust estate to retransfer the property to

its original owners in the specified proportions. The court also held, however, that Starkweather had the right and had the power and authority under his trusteeship to incur all indebtedness that had been incurred in his own name and that of the corporations not only to plaintiff but to certain other specified creditors. The court then ordered Starkweather to file his account, supported by proper vouchers. He did so, but his account was unsatisfactory to the court in some respects and to appellants and a further order was made requiring him to furnish other details in connection with said account. During all this period appellants were insisting that the action be converted into one for an accounting by the trustee to the beneficiaries of said trust.

At this juncture, on April 21, 1923, and with the consent of all the parties, the court appointed a referee with power to administer oaths and examine witnesses, receive oral and documentary evidence, examine into the accounts of said trustee and segregate the matters pertaining to the trust estate from the matters pertaining to his personal enterprises other than said trust estate, take an account of all moneys and properties expended or used upon the trust property and in general to make specific findings upon certain questions of fact relating to said account. Later and on May 9, 1923, the order of reference was amended so as to require a report and findings upon still further details in connection with said account, and provided that the disbursements of said trustee should be segregated under the heads of labor in extraction of products and in development of properties, railroad, railroad rolling stock, machinery and other equipment, buildings and other improvements, office expense, with discretion in the referee to make still further segregation, if found in order, and directing him to report to the court within the time specified.

The taking of evidence in connection with the reference ended on December 1, 1923. On January 10, 1924, the referee submitted his report and findings to the court. These findings were later, except as modified in one or two particulars, made a part of the findings of fact of the court herein. Ten days were allowed for filing objections. Appellants filed certain objections, covering practically the same grounds asserted in their brief. A hearing in open court was had upon this report of the referee and additional evidence was

received by the court. The court then made an order modifying said account to the extent of about $22,000, and in other respects adopted the referee's report. Unsatisfied with this, appellants were allowed permission to attack said report by affidavits of expert accountants. Counter-affidavits were filed and the court again overruled the attempts to impeach the account. When the findings were made by the court, appellants again filed affidavits attacking the account. The court then gave the matter still further consideration and denied the motion for a retrial.

The testimony heard by the referee was not reported and is not in the record. In addition to the findings of the referee, and disregarding the fact that the evidence heard by him is not before us, and disregarding any presumptions that attend the findings of the referee, it may be observed that the correctness of the report was testified to by the trustee himself, also by the bookkeeper, who had formerly been in the employ of said copartnership, and the correctness of a great deal of it was vouched for by appellant George Bonnefoy himself as well as by his brother Victor Bonnefoy, and proper vouchers were filed to support it. Judgment passed establishing the trust indebtedness to plaintiff and fixing the priorities between the parties; it also fixed the trust indebtedness to said trustee, provided for the subrogation of the creditors to the rights of the trustee and provided, in case of a failure to redeem, for sale of the properties and distribution of the proceeds thereof and for a deficiency if the sale did not provide for the payment of the total claims.

Under this situation appellants insist that there is ground for this court to interfere and restate this account. The mere recital of the above facts is a sufficient answer to any such request. It is not and cannot be contended that substantial evidence was not received in support of said account as it is rendered. This fact appears over and over throughout the record and there is no assertion by appellants that substantial evidence is entirely wanting to support it.

Appellants seem to contend that authority was wanting in the trustee to incur this indebtedness subsequent to the execution of the contract of June 13, 1917, but, as above pointed out, said agreement gave said trustee the widest and

fullest power of management and control of said enterprises and expressly authorized the incurring of indebtedness in connection therewith. Moreover, appellants stood by during a large part of the period while same was going on and either expressly or tacitly approved it.

Appellants also seem to contend that inasmuch as the court found that the trustee had not lawfully organized the corporations and taken over the properties of the trust estate, and the complaint alleged that this had been legally done by him, for this reason the case was tried on inconsistent theories and the judgment should be reversed. The evident answer to this is that at appellants' own request the issues of the case were enlarged and by consent the action took the form of an accounting between the trustee and appellants together with the ascertainment of the amount of indebtedness incurred by him on behalf of the trust estate at plaintiff bank and other places. In other words, at their own request and acquiescence, the case took a form not wholly measured by or consistent with the allegations of the complaint. An appreciation of this situation is a complete answer to a great number of criticisms indulged by appellants in their brief. For example, they urge that the complaint only claimed $244,000 whereas the court allowed them 255 odd thousand dollars and that the trustee was credited with a note of some $27,000 which was not mentioned in the complaint or due at the time of filing thereof. The above observation also answers the contention that the notes of the lime corporation were not the indebtedness of the trustee because not alleged in the complaint.

Another contention stressed by appellants is the claim that Starkweather as trustee borrowed money from plaintiff bank which was charged as advancements to the trust estate by him and that these moneys were spent upon the trust estate and were charged against the beneficiaries a second time; in other words, that the amounts the trustee credited himself with were doubled as against them. This point was urged many times and was answered repeatedly by the referee both in his report and by affidavit. Respondent in its brief has correctly pointed out that the system employed in the accounting was first to ascertain whether the indebtedness claimed by plaintiff and other creditors was indebtedness incurred by Starkweather as trustee. This

issue was found in favor of the creditors, but when the account was taken between Starkweather and the trust estate these debts were not considered. The true amounts spent by him on the trust estate were calculated independent of these obligations of creditors and when the total thereof was ascertained, the decree of the court was that these creditors should be subrogated to the rights of the trustee as against said trust estate and that the beneficiaries under the law of agency were personally liable for any deficiency. There was no doubling of credits by said trustee. A failure to appreciate this situation brings appellants into error about the item where they contend they were "short changed."

The court found that the trustee had acted honestly; that the accounts were kept correctly; that although he mingled some accounts of personal business with the trust account, they were severable and could be and were segregated, and that said trustee was neither guilty of fraud nor of bad faith. A great many of appellants' statements are predicated upon the assumption of fraud, but in the face of this finding no merit can be accorded them. These and the other findings made have ample support in the evidence. We do not deem further discussion required.

The judgment is affirmed.

Richards, J., Waste, C. J., Seawell, J., Curtis, J., Langdon, J., and Shenk, J., concurred.

Rehearing denied.